So now we will call the matter of 16-60052, Capital Options v. Dennis Loomis, Baker Hodge Settler. Lee Horner, appearing for Appellant Capital Options, Your Honor, again. Welcome back. I don't know if we need to keep making a record on that. We do, so that's good. Fair enough. This is an interesting issue with respect to the JDCA agreement, which Baker and Hoss Settler and Mr. Loomis were escrow holders, if you will, not really denominated as such, but that's the legal effect. There were two versions of this. The original, of course, was, as we discussed, signed in June, and then in August there was an amendment. If I could invite your attention to the amendment, it's, well, both of them, first of all, say the undersigned client members, meaning of G-2, in connections with the obligations of G-2, and then it goes on to say who does what. In the amendment, it does, the capital options membership in G-2 is not a prerequisite to the disbursement of funds. Well, let me ask you this, just so that, just to kind of get my head on straight here. Sure. If we determine that capital's claims against G-2 are barred, let's say you lose on the case that we just talked about. Right. I know you're not conceding that, but I'm saying hypothetically, it's claims against Loomis and Baker will also fail, right? No. Or how about the best argument that maybe the fiduciary misconduct, but it seems that most of capital's claims against Loomis and Baker are premised on capital having an equity interest in G-2, right? That is true as far as the original JDCA, Your Honor. That does require a finding of membership. The amendment, however, does not. It calls them client members for the purpose of this JDCA, and it says these client members shall cause G-2 to disperse the funds from the two clients, Cusimano and Atlas Free. Right. Are you drawing a distinction, counsel, between the turnover of records and estate funds, which to me does depend on a win in the prior case that we have, and then the fiduciary misconduct claim may not depend quite as much on showing an interest in G-2? The amendment clearly does not require a showing of membership in G-2 at all. But you did allege, though, a claim for turnover of records and funds. That does depend on having an interest in G-2, correct? Well, it would with respect to G-2 records, but with respect to Loomis and Baker-Hanstettler records, the amendment, amended JDCA, gives them standing to ask for those documents. They don't have to be a member to have standing like that because the funds were supposed to have been dispersed. They were not held in escrow. They were, it looks like, given to Goldsmith, and then Baker-Hanstettler and Mr. Loomis say, well, it's Goldsmith's fault. Go after him. Well, according to the amended JDCA, it says they're supposed to be held by Baker and Hanstettler until there's either a joint agreement from everybody or there's a court order, and that was just totally ignored. Now, they say here, well, there's nothing in this agreement that says we, Baker-Hanstettler and Loomis, are fiduciaries to you people. That's what it says. The issue there, of course, is can you waive your right to have a fiduciary do what they're supposed to do. If you can waive that right, it seems that every crooked fiduciary in town would have that same clause in there. And when they steal all the money, say, well, you can't do anything to us because you agreed that we could go ahead and do whatever we felt like with your money. That's not the case. And the State Bar, because Baker-Hanstettler is a licensed law firm, as is Mr. Loomis, have certain obligations under the State Bar rules. Maybe they don't arise under this agreement, but the State Bar says thou shalt not steal, basically. And so that's another reason to keep this case going as far as Baker-Hanstettler goes, whether or not capital options is found to be a member of G-2. The amended agreement does not require that as a prerequisite. Well, go ahead, Judge Wallace. I've got a little problem. You might bring me up to speed on this. If I understand, the question is whether or not there's finality of this order. And if I understand correctly, when the law court capital options conceded that it could not prevail in the proceeding unless it could show that there was an LLC member on appeal in the Goldsmith's proceedings. Is that correct? That is correct. It wasn't as clear, though, under the original. If you can go up and show your magic to the judge, that's an interesting issue. The district court indicated, if you could go up, the bank district court indicated, if you could go up and show your magic and find something. But as of now, that was left open without prejudice only for that reason. Now, what's your magic? Well, Judge Nielsen. We might as well get a record so the bank district judge can read exactly what the magic is. Judge Nielsen gave me a lot more weight on that than I think he should have. The membership is a prerequisite to determining what happens under the original JDCA. Your Honor, that was not made clear in the record. It just said if the limitations issue we lose on Goldsmith, then the JDCA issue is out the door as well. But that's the original one, not the amendment. And I was not as clear as I should have been. The amendment, it doesn't require any magic at all to figure out. Those funds are disbursable whether there's a finding of membership or not. And that's what the parties agreed to. That was the bargain for exchange. So is that your read? But that was never presented to the bank — that was never presented as an argument to the bankruptcy court, was it? I don't believe that specific part was. It was addressed to the main JDCA. I think if it was, the bankruptcy judge would have found it, because that was the point you were arguing. So why isn't that issue waived before us? Well, I believe it was implicit in our argument below, Your Honor, that the amendment was not being waived. It was where membership is required, and the only place it's required is the amendment. But the issue is directly before you by the bankruptcy judge. And it seems to me it's incumbent upon counsel to help out. This is a huge, huge issue. It is. And the bankruptcy judge is right on point and says, period, and now you want us to go about things that you didn't talk to the bankruptcy judge about in order to save your case. I find some difficulty with that. Well, I understand, Your Honor, and it should have been made clear because we did have the two JDCA agreements that were in play. I understand. I'm just trying to be fair with the bankruptcy judge. Sure. He was giving you every option. He didn't throw you out of court, and he did it without prejudice so you could bring it to us. That's correct. Right. I think Goldsmith was thrown out with prejudice, but this was not. If the panel has no further questions, then I'll reserve the balance of my time. Okay. Thank you. Good morning. Good morning. May it please the Court, my name is Steve Jerome, and I have the privilege of representing both Baker and Hostetler and Mr. Dennis Loomis this morning. I'd like to follow up on Judge Wallace's colloquy with counsel, and I think that's the exact issue that the BAP found. This argument pertaining to the amended JDCA was not pled in the complaint. Capital Options did not ask for it to leave to amend at any time to inject this issue into the complaint. Of course, we're not reviewing the BAP. We're reviewing the bankruptcy judge. I understand, sir. I was just saying that the BAP, that was their determination of what Judge Nielsen's ruling was, is that his ruling was it was not before him. They noted that Capital Option, not only was it not before Judge Nielsen, it was not an issue that he ever asked for leave to amend under Rule 15 to plead. And at all times, and our position is even if he tried to do so, which he hasn't, it would be futile because the provision that he's relying upon imposes duties on Mr. Stapleton's clients, not my clients. The paragraph could not be more clear. It says, the client members shall cause G2 to distribute all settlement funds received, and it goes on. My client was admittedly not a client member, and it is not G2. So the paragraph that Capital Options is saying imposes liability upon Baker Hostetler and Mr. Loomis actually imposed liability on Goldsmith. So just so that I understand Capital's argument on this, Capital's claiming that Loomis violated the agreements by diverting all of the collected G2 funds, including those required by the amended JDCA to be dispersed upon receipt. I think it's the Atlas Free Cusimano funds directly to Goldsmith. Is that what they're claiming? That is the argument here. That's the argument here. And you're countering by stating that Capital never alleged that Loomis and Baker breached a duty owed by the JDCA or the JDCA amendment, and that even if it did, no claim exists as Capital misreads these agreements. Is that, am I summarizing? You are very close. I would add the component of the, there was a complaint for missing funds generically. There was no allegation of a breach of this, quote, distribution obligation that Mr. Horner refers to in the complaint. There was nothing that would survive a 12B motion under Twombly and Iqbal that would articulate any facts or specifics on breach. It just made a generic reference and its position was it was a member of G2 and therefore it was entitled to all of G2's funds. Our position on that point is they have not been able to establish that and that's a condition precedent to be able to recover from Baker-Hostetler. Assuming they could establish all the other facts, but for our purposes we just assume without concession that they could. The other point I'd like to point out to Mr. Horner just misstates his own record with respect to the Baker-Hostetler absconded with the funds. And in fact, it's actually in the Goldsmith, the prior case, the 52 case, excerpts of record at page 219, paragraph 14. That is the State court complaint filed by Capital Options to dissolve and seek the appointment of a receiver. In that complaint, Capital Options admits that it had received the Dominic Cusimano funds. So he's now up here complaining about suing Baker-Hostetler for funds his client has already admitted it received. And that, again, would be a pleading problem for him if this Court would, could reverse. You mean there's no magic? There is no magic, yes, sir. Absolutely. And then I would like to turn briefly to the issue because the overwhelming majority of the funds at issue are dependent, admittedly, on a determination of membership in G-2. And I think, as Mr. Stapleton pointed out in the prior case, the issue really comes around statute of limitations. And I break that argument down into two components, 351 under the California Code and all the other arguments. And as Mr. Stapleton very articulately went through, all, most of those other arguments weren't timely raised and are therefore waived. But even if you start looking at the timing, it doesn't matter. Because bankruptcy tolling under 108 gives you the longer of the period at state law or two years from the petition date. So you can't, 108 will not, if the statute of limitations was somehow still live on the petition date, 108 does not get you there because this complaint was filed, the complaint against capital options against G-2 and Goldsmith was filed too late. And if they can't prove that they were a member, they can never prove damages against me. And that is the fundamental problem. That was our position, was actually our complaint we suggested was not yet ripe. The court didn't agree with that. But then once, it went from not being ripe to moot once capital options lost that issue. The 351 argument, I think, is more problematic for capital options than they would like to admit. This Court in the Abramson decision noted, and I quote, the California tolling statute is therefore unconstitutional on page 393. There was no ambiguity in that statement saying it's unconstitutional as applied to the facts of this case. There was a determination of what, that the statute was unconstitutional. What Mr., what capital options seems to be arguing is that the prior California Supreme Court supersedes Ninth Circuit law on issues of Federal, Ninth Circuit rulings on issues of Federal constitutionality. I don't think so, and that's why the subsequent California cases that Mr. Stapleton relies on, and we'd also note in our brief, those lower California courts recognize this Court's decision in Abramson and say, okay, now we have to And the record is replete with references to interstate commerce. You have people moving. You have the allegation by capital options is that Mr. Goldsmith went to Montana and essentially continued the G-2 business throughout the country. He sued Engstman, which this, the 52 adversary proceeding actually started out as a case against an Idaho lawyer for the same argument that applies to Baker Hostetler, turnover of money, turnover of records. And it was amended to add Goldsmith and G-2 in- So can I have you, I know your time is running short, and I have a very specific question because you were arguing that the allegations with regard to fiduciary obligations are insufficient to basically survive dismissal. And I'm looking at the complaint, paragraph 12, and it says, as recipients of G-2 funds, whether pursuant to the JDCA or otherwise, defendants Loomis and Baker were actual trustees of said funds and owed a non-waivable fiduciary duty to plaintiff. And then it goes on to say, well, the funds disbursed is in violation of that. Why isn't that allegation sufficient? That allegation- You may have answered it, but I missed it. So that's why I'm going back to the complaint, looking at the allegations to see if there's an independent fiduciary claim here that could survive dismissal. Your Honor, I think the answer is really quite simple. There is nothing- no pled facts that the Atlas Free or Cusumano funds were actually ever in Baker's possession. For us to be holding- to be accused of misappropriating funds, there would have to be a factual allegation that we had actually received the funds. Okay, well- And my understanding is actually the allegations against Mr. Goldsmith is he absconded with the funds. So if Mr. Goldsmith absconded with the funds, my client- they were never in my client's possession. So it's- but okay. I'm struggling with this same area that Judge Wynn is touching on. It- the breach of fiduciary duty appears to be based on the JDCA and the JDCA amendment, not on having a judicially recognized interest in G2. Okay. And so if that's the case, why doesn't it survive? There are other claims that we were talking about that- and I think Judge Wynn touched on that- that are dependent on a judicially recognized interest in G2. So- but this one doesn't seem to be. So- And I think the answer to that is because- It seems a thin read. It- and I- It seems a thin read. Is what you're arguing the read's too thin? That the read's too thin and the documents attached to it impose no such duty with respect to the funds at issue. Those funds are to be distributed by the client members, not by Baker- Baker Hostetler had no obligations under the amended JDCA with respect to those funds. Well, if they were- but didn't they have an opportunity to amend or what is the- And that goes to the point that I brought up earlier with respect to the- as the BAP noted, no such request for amend was ever requested by Capital Options to flush out this issue if that was truly the issue. This is a issue that's now being created after the dismissal, after- I heard you say something like the T word, Twombly. Yes. So, I mean, I don't think that if he would have filed a motion for leave to amend to flush this issue out before the bankruptcy court, whether or not he could have pled sufficient facts in light of the agreement imposing no duties with respect to those specific funds upon my client, that was an issue that was never presented to the bankruptcy court. So, would you concede that it's possible that it- that the breach of fiduciary duty is not dependent on a judicially recognized interest in G2? I would not concede because as pled it was to the Global Universal Funds. Okay, but- so, but- but- all right. But it- it- it's possible that there could be facts that are not dependent on that, but you're saying they aren't here. It was not pled and I think the express language of the amended JDCA, which does- imposes obligation on other parties with respect to those specific funds would make it impossible to allege such facts because the- Right. And I- I- as I understand your argument, counsel, it's that there's some vague reference, it appears to me, reading the complaint, the paragraphs I referenced, 12, 13, 14, around there. Reading that in isolation appears that there may be some sort of independent fiduciary claim there, but you're saying that the attached JDCA agreement and the amendment would contradict those vague allegations, right? Correct. Is that your argument? The- Can you help me out by- by referencing the specific provision in the JDCA amendment that you say imposes no obligations, then I can read that together with the complaint language? Absolutely. So let's start with the amended JDCA, which appears in the record at 22, and that's the amended- paragraph 1C specifically states, the client member shall cause G2 to distribute all settlement funds received from Dominic Cusimano and Atlas Free, including Greg Ludwigson, directly or indirectly within two days of receipt of such settlement funds by G2, 50 percent to George Henry Goldsmith, 50 percent to Capital Options with no deductions for attorney's future costs. That is the paragraph that Capital Options is saying, my client breached.  Okay. I've got it. So it's all dependent on being client members on showing an interest in G2. Correct. And the actual original JDCA disclaimed any fiduciary obligation. So therefore, you have that legal issue, which then Judge Nielsen agreed with, and that was not an issue that was raised on appeal, so I think that issue has been waived as well. Unless the court has additional questions, I don't want to continue. I think we are in overtime, but if any of the court members have questions, we- No. All right. Thank you. Thank you very much for your argument. Looking at that amended G2, I'm sorry, JDCA, at the top it said, it defines what client members are, and that's the underside, which includes the Capital Option principles. It goes on, as Counsel just said, the client members shall cause G2 to distribute the money. Now, we didn't try the case in the pleadings. We weren't knowledgeable of the fact that there was a trust check- You can't keep making stuff up as you go along. Okay. I'm not- That's what we're trying to decide. Is it there or is it just, you know, you can't say, well, it could be there. Well- But it's either got to be there or it's not there. It's not there. What also is not there is any evidence that Capital Options received these Cusimano funds ever. That's a surprise to me. I just heard that today for the first time. So the issue is, does this agreement give rise to a fiduciary duty which is independent of a court finding of judicial- I'm sorry, of G2 membership? It does on its face. That's exactly what it says. It says that Baker-Haas-Tedler will hold the money, and they didn't. Okay. Anything else then from the panel? No. I don't think so. Thank you. That's your argument in this. This matter will then be submitted.
judges: Wallace, Callahan, Nguyen